IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| OKSANA HANSEN | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:20-cv-00722 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| 3-D TECHNOLOGY GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff Oksana Hansen's Motion for Summary Judgment. (Doc. No. 12). In support of the Motion, Plaintiff filed a memorandum (Doc. No. 13) and statement of undisputed material facts (Doc. No. 14). Defendant responded in opposition to the motion (Doc. No. 16) and to the statement of facts (Doc. No. 17). Plaintiff filed a Reply. (Doc. No. 18).

Plaintiff worked for Defendant 3-D Technology Group, LLC ("3-D") for less than a year before she was terminated in December 2019. She claims the termination was in retaliation for her raising complaints of sex-based discrimination and seeks summary judgment on her claim for retaliation. Defendant claims Plaintiff's claims of sex-based discrimination were not made in good faith, and that she was terminated for a combination of legitimate, non-retaliatory reasons, including insubordination, failing to come to work, making untruthful statements, and the belief that she had no intention to improve her poor work performance.

As discussed below, because there are questions of fact regarding the reason for Plaintiff's termination, Plaintiff's motion for summary judgment will be **DENIED**.

# I. BACKGROUND

Plaintiff began working for 3-D in January 20, 2019. 3-D claims that by the summer concerns existed about her performance and in November 2019, 3-D determined she should be placed on a performance improvement plan. (Martinez Decl., ¶ 25). 3-D scheduled a meeting with Plaintiff for November 22, 2019, to discuss a performance improvement plan. (*Id.*, ¶ 26).

At the start of the meeting, Plaintiff complained that the performance improvement plan was issued in retaliation for her earlier informal complaints of "unfair treatment" and "hostile work environment." (Doc. No. 17, ¶ 5). At 3-D's request, Plaintiff put her complaints in writing so human resources could perform an investigation. (*See* Doc. No. 13-1).

In what she characterized as a "formal complaint," Plaintiff complained that her supervisor, Brad Morrow, had been treating her unfairly for several weeks. (*Id.*). Among the specific complaints were that she was not invited to two golf events and when she asked why she had not been invited, she was told the company had never had a girl who played golf and they did not think to ask her. (*Id.*). She also stated that she previously complained of "unfair treatment" with regard to who the company selected to attend other company events. (*Id.*). She specifically mentioned 3-D selected Morrow and Chris Martinez, 3-D's CEO, to use the company's two tickets to a CIO dinner event that she had wanted to attend. (*Id.*). She stated that she had complained to both Morrow and Martinez about what she perceived to be "unfair treatment" in not being invited to attend the dinner. (*Id.*).

In the written complaint, Plaintiff also stated that "in the last few months" she had several conversations with Chris Martinez and Emily Martinez, Vice President of Operations, regarding Morrow "sabotaging [her] opportunities for success." (*Id.*). Plaintiff wrote that in response to her complaints about Morrow, she was told to "play nice and get along" and given a book called

2

Case 3:20-cv-00722   Document 29   Filed 09/27/21   Page 2 of 8 PageID #: 380

"Seducing the Boys Club." (*Id.*). She perceived being given the book as "insinuating that I, a woman, should change my behavior to acquiesce to unfair, discriminatory, and hostile treatment from my male counterpart." (*Id.*).

On December 2, 2019, 3-D met with Plaintiff to discuss the results of its investigation. (Doc. No. 17, ¶ 7). Attending the meeting were Plaintiff, human resources director Kim Fickes, and CEO Chris Martinez. (*Id.*, ¶ 8). 3-D advised Plaintiff that it had investigated her complaint and concluded there was no evidence to support her allegation that Morrow engaged in unfair treatment, discrimination, or retaliation. (*Id.*, ¶ 9).

Plaintiff recorded the meeting and submits several statements made by Chris Martinez near the end of the hour-and-a-half meeting as evidence that her termination the following day was retaliatory.

> Okay because I think that's the big thing, [be]cause if you think this is still retaliatory and that we are discriminating against you, I just don't think long term it works … is my personal opinion. I just don't think it does."
>
> If you don't feel like people are being transparent with you, or this conversation is fake and I'm not being transparent with you right now, or you truly believe you are being discriminated against, then how can you even work under those circumstances here?
>
> If you don't accept this and my findings then I don't know if there is a way that you can more forward here. But if you do, then I think you can still be successful with some of the things that I recommended.
>
> If you want to be here, then accept what we wrote to you.
>
> So, what I want you to do is, I want you to sit down with him and I want to document the sh*t out of everything weekly on what you are doing, and I want to see whether he manages you or not … and you have my support.

(*Id.*, ¶¶ 10-14).

The following morning, Plaintiff did not go to the office. She sent the following email to CEO Chris Martinez and HR Director Kim Fickes:

> Thank you for meeting with me yesterday to review the findings of your investigation.
>
> During the meeting you said I had to agree with the conclusions of your investigation, otherwise you indicated that I could not continue to work at 3D Technology. I don't believe that was a fair position to put me in. In all candor, I do not agree with the conclusions and will not say that I do. I stand [by] my claims that I raised to the company in good faith.
>
> Nevertheless, I look forward to discussing the performance improvement plan with Brad this afternoon and continuing to work at 3D Technology.

(Doc. No. 17, ¶ 17).

Within one hour of receiving the email, Martinez called Plaintiff and fired her. Plaintiff contends the termination was retaliatory.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

Title VII prohibits discriminating against an employee because that employee engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). The elements of a Title VII retaliation claim are as follows: (1) the plaintiff engaged in activity protected by Title VII; (2) the employer knew of the exercise of the protected right; (3) an adverse action was subsequently taken against her; and (4) there was a causal connection between her protected activity and the adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (citing *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)). "Title VII retaliation claims 'must be proved according to the traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

When a retaliation claim is based on circumstantial evidence, the court typically applies the *McDonnell Douglas* burden shifting framework to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment. *See Jackson v VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (discussing the *McDonnell Douglas* framework in the context of a Title VII discrimination claim) (citing *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973)); *see also, Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (apply *McDonnell Douglas* framework to Title VII retaliation claim). Under the *McDonnell Douglas*

framework, to survive summary judgment a plaintiff must establish a prima facie case of discrimination. *Laster*, 746 F.3d at 730. The burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. *Id*. The burden of production then shifts to the plaintiff to provide evidence demonstrating that the employer's proffered reasons are pretext for discrimination. *Id*. "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.* at 731 (quoting *Dixon v. Gonzalez*, 481 F.3d 324, 333 (6th Cir. 2007)).

Here, Plaintiff seeks to do more than "survive" summary judgment and present her case to a jury, she seeks judgment in her favor. Accordingly, she must establish that there are no disputes of material fact as to any element of her claim such that she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. With regard to the final element – causation – she has not done so.

Chris Martinez, 3-D's CEO and the person responsible for the termination, stated that he fired Plaintiff for a combination of reasons, including her poor sales performance, her failure or refusal to meet with Morrow as instructed to go over her performance improvement plan, her email with untruthful statements about what Martinez said during the December 2 meeting, and Martinez' belief that she had no intention of actually improving her poor performance. (Martinez Decl., Doc. No. 16-1, ¶¶ 46-52).

Plaintiff argues that the evidence shows the proffered reasons did not actually motivate her discharge. (Doc. No. 18). She claims the recording of the December 2 meeting shows that she did not refuse to discuss her performance improvement plan, she was willing to do so and discussed times when she and Morrow would both be available. (Doc. No. 18 at 4-7). Plaintiff states that after the December 2 meeting was over, she and Fickes scheduled the performance meeting between Plaintiff and Morrow for the following afternoon. (*Id*. at 6 (citing Doc. No. 13-6 (calendar

invite for "Follow up Meeting" on Dec. 3, 2019, at 1:30 p.m.)). With regard to her alleged poor sales performance as cause for her termination, Plaintiff argues that the fact that she was set to be placed on a performance improvement plan for 60 days shows that Martinez did not plan to fire her for poor performance until after he received her email the morning of December 3. (*Id*. at 7-8).

For his part, Martinez claims that when he fired Plaintiff, he did not know the meeting had been rescheduled, he only knew that Plaintiff was not at work the morning of December 3rd as expected, there was nothing on the calendar to indicate that Plaintiff would not be at work, and Plaintiff had not met with Morrow to discuss the performance improvement plan. (*See* Martinez Decl., Doc. No. 16-1, ¶ 50; Second Martinez Decl., Doc. No. 24-1, ¶ 4).

Finally, Plaintiff argues that the recording of the meeting establishes that she did not make false statements about what Martinez said during the meeting and that no reasonable jury would believe the statements in her email were "false." (Doc. No. 18 at 2-4). She argues that Martinez has shifted his "non-equivocating" claim that she made "untruthful statements" to a claim that her representations were "counter to his overall tone and message" or "falsely summarized" his position. (*Id*. at 3-4). She asserts that this shifting position is enough to demonstrate pretext.

In this case, the element of causation raises questions of fact not appropriate for determination on summary judgment. Viewed in the light most favorable to Defendant, a reasonable jury could conclude that Martinez fired Plaintiff for the reasons he claims, or at least that she was not fired because of her alleged complaints of discrimination and retaliation. That the proffered reasons for termination have evolved over time does not conclusively establish that the reasons given are pretextual. Whether 3-D fired Plaintiff in retaliation for her complaints of sex discrimination and retaliation is a question for the jury.

Because questions of fact on this element are dispositive, the Court need not consider the remaining elements of the claim.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment will be DENIED. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE